UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

***************************

UNITED STATES OF AMERICA,
        Plaintiff

vs.                                Case No. 1:17-cr-00039-WES-LDA-1

REYSEAN WILLIAMS,
        Defendant

***************************


TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE LINCOLN D. ALMOND
AT PROVIDENCE, MASSACHUSETTS
ON JUNE 21, 2018


APPEARANCES:

For the Plaintiff:
Terrence P. Donnelly, Assistant United States Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, Rhode Island 02903
401-709-5000

For the Defendant:
Jason A. Dixon-Acosta, Esquire
Paul J. DiMaio, Esquire
215 Broadway
Providence, Rhode Island 02903
401-272-3900



Transcriber:  Karen M. Aveyard,
              Approved Federal Court Transcriber

    ----------------------------------------------------

**TRANSCRIPTION PLUS**
**1334 ELM STREET**
**LEOMINSTER, MASSACHUSETTS 01453**
**(978) 466-9383**
**k.aveyard@comcast.net**

P R O C E E D I N G S

1

2

3    THE COURT:  The case before the Court today is the

4  matter of the United States of America versus Reysean Williams.

5  It is Case No. cr-1739-WES.  The matter is before the Court

6  today for a hearing on defendant's Motion to Reconsider and to

7  revoke its prior -- the Court's prior pretrial detention order.

8    Can attorneys present for this proceeding identify

9  themselves for the record, please.

10    MR. DONNELLY:  Good morning, your Honor.  Terrence

11  Donnelly for the United States.

12    MR. DIXON-ACOSTA:  Good morning, your Honor.  Jay

13  Dixon-Acosta for Mr. Williams.

14    THE COURT:  Alright.

15    MR. DIXON-ACOSTA:  Paul DiMaio also, your Honor, for

16  Mr. Williams.

17    THE COURT:  I didn't even see you over there,

18  Mr. DiMaio.  Sorry.  I thought you were one of the security

19  guards.

20    So I have reviewed the motion, tried to get myself

21  back up to speed in this matter.  I also reviewed the Pretrial

22  Services Report that was prepared initially after the

23  defendant's first appearance and bail hearing in this matter.

24  What might be helpful before I hear from Mr. Dixon-Acosta or

25  Mr. DiMaio is, Mr. Donnelly, if you could just give me a brief

1  update on the status of this case.

2  　　　　Why hasn't this case gone to trial, is it stayed by

3  the co-defendant's Motion to Suppress?

4  　　　　MR. DONNELLY:  I think presently it is, your Honor,

5  yes.  There had been a number of continuances requested by both

6  defendants.  No objection by the Government.  There's a lot of

7  evidence in this case for counsel to be digesting and

8  evaluating.

9  　　　　THE COURT:  Sure.

10  　　　　But that Motion to Suppress has been briefed and

11  argued?

12  　　　　MR. DONNELLY:  It's been briefed and argued, yeah.

13  　　　　THE COURT:  Alright.  Thank you.

14  　　　　So I'll hear from the defence on the motion.

15  　　　　MR. DIXON-ACOSTA:  Thank you, your Honor, and thank

16  you for hearing us so expeditiously on this motion, your Honor.

17  　　　　THE COURT:  Anytime.

18  　　　　MR. DIXON-ACOSTA:  (Inaudible) between belaboring the

19  Court with what's already been said in the motion and --

20  　　　　THE COURT:  Well, I'd like to hear it from you,

21  Mr. Dixon-Acosta.

22  　　　　So I've heard a lot of information and a lot about

23  Mr. Williams's background.  You brought in a number of what I'd

24  call character witnesses way back when from his family, and as

25  I said at the time, it appears he comes from a strong and good

1    family.  So all that information I have, his family situation,

2    et cetera.  What I'd really be interested in is, you know,

3    since you first argued for the release of your client, you've

4    gotten discovery, you've gotten more information regarding this

5    matter.

6              So is there anything that you've gotten in discovery

7    or learned about this case through your investigation that you

8    think changes the equation at all and might cause me to

9    reconsider the prior detention order?

10             MR. DIXON-ACOSTA:  Yes, your Honor.

11             THE COURT:  Okay.  Tell me what it is.

12             MR. DIXON-ACOSTA:  That being the Government's

13   characterization of who Mr. Williams was in this endeavor in

14   relation to the co-defendant, as well as the 17-year-old, was

15   one that there was a particular hierarchy, and I addressed that

16   in my motion, and I believe that characterization was mostly

17   informed by the statement by the 17-year-old who cooperated

18   with investigators.  At the time, my understanding is that the

19   investigators had not yet even moved, administrative, subpoena

20   or otherwise, to get other information.

21             So at the time they had the 17-year-old fold, which to

22   some extent would have corroborated what the characterization

23   was.  But then when we got the rest of the discovery, it's

24   clear that the 17-year-old, and not to minimize the conduct,

25   was already involved in these endeavors before meeting either

of these defendants. It's clear that the 17-year-old, of her

own free will and of her own -- she was her own boss, so to

speak, your Honor. She decided when and where to do what with

whom. She decided what to post and when. She decided what to

charge, she decided who she was going to meet, who she wasn't

going to meet. It becomes clear through discovery that she and

Mr. Gomes were involved in an intimate relationship. It

becomes clear through discovery that she, in essence, even

threatened to turn in her mother to police for what she says is

not getting her fair share of profits from selling her films.

Everything in discovery, your Honor, in my opinion,

makes the more compelling argument that at worst, the three of

these individuals were equal co-conspirators at worst, your

Honor. That's in the light most favorable to the Government,

not that any one of them pulled strings for the other. More

favorably, your Honor, I think that there is a compelling

argument that Mr. Williams was a mere instrumentality of the

17-year-old who was already engaged in this commercial sex

activity who perhaps needed someone with a car and who could

book a hotel, or someone to make reservations of that sort, or

someone who could post on Backpage as she had done with other

people before, your Honor.

THE COURT: Okay.

MR. DIXON-ACOSTA: Additionally, Mr. Gomes's counsel

had characterized it, his prior counsel anyway, Mr. Williams as

1   that of someone who maybe took advantage of Mr. Gomes.  I

2   believe the Court was even concerned in the way that Mr. Gomes

3   and Mr. Williams had met, that being Mr. Williams was working

4   at the group home at which Mr. Gomes had resided.

5          I think it has become clearer through Mr. Gomes's

6   post-Indictment conduct that he's not one who had been

7   manipulated by anyone.  It appears at worst, your Honor, that

8   there was a coincidental meeting between them and that

9   Mr. Gomes was involved with the juvenile, the 17-year-old, and

10  that one or both of them enlisted at worst the assistance of

11  Mr. Williams.  All of that, I think, (inaudible) against the

12  characterization that there was any hierarchy, let alone that

13  Mr. Williams was at the top of that hierarchy.

14         THE COURT:  Alright.  Anything further?

15         MR. DIXON-ACOSTA:  Mr. Williams has (inaudible)

16  himself the model detainee by all accounts, your Honor, and I

17  think that also supports the characterizations of his family as

18  who they've known him to be, notwithstanding the allegations.

19         Thank you, your Honor.

20         THE COURT:  Mr. Donnelly?

21         MR. DONNELLY:  Thank you, your Honor.

22         Very briefly, your Honor, we object to the motion.  We

23  believe it should be denied.  There's been no significant

24  change in circumstances here.  The case, as the Court indicated

25  in its --

1          THE COURT:  Can you, and it's been a while since I

2     heard this matter, the defendant is charged with offenses which

3     trigger the presumption of detention, the rebuttable

4     presumption of detention as a risk of flight and danger to the

5     community.  Do any of these charges trigger mandatory minimum

6     jail sentences?

7          MR. DONNELLY:  Yes, your Honor.  He's indicted for

8     offenses that carry ten-year mandatory minimum sentences.

9          THE COURT:  So refresh my recollection.

10     Mr. Dixon-Acosta makes an argument, I think he used the word

11     that at most all three of these were equal co-conspirators

12     here, that his client was a mere instrumentality assisting

13     Mr. Gomes and the 17-year-old in this endeavor.  Is that a fair

14     characterization of the evidence?

15          MR. DONNELLY:  No.

16          THE COURT:  How would you describe the evidence or how

17     can you proffer some of the evidence?

18          MR. DONNELLY:  Yes, your Honor.  I mean, from the

19     30,000-foot level, you know, we believe that -- we stand by our

20     position that Mr. Williams was the leader of this conspiracy.

21     He was 27 years old, 28 years old, had a car that was being

22     used to effectuate the prostitution conspiracy.  He was the one

23     with funds, as well as internet access, to, again, facilitate

24     the acting out of the conspiracy.

25          He met with the victim.  She discussed with him

arrangements for how they would do business together.  He told
her she would get half of the money and he would keep half of
the money.  That, of course, as in most of these, is a common
representation that never turned out to be true.

The victim did not keep hardly any of the money which
was given to her by her customers.  We have never painted the
victim in this case, the 17-year-old, as a model of virtue,
your Honor.  Mr. Dixon-Acosta is correct, that the victim had
engaged in other acts of prostitution, most likely prior to
meeting Mr. Williams, but certainly Mr. Williams, with the help
of Mr. Gomes, got her organized where she estimated she was
doing probably ten plays a day.  She said sometimes less,
sometimes more.

It was Mr. Williams who helped with his vehicle
facilitate the transportation of this minor three states away
to New York where the defendant took her to a hotel in Copiag,
New York on Long Island.  That information --

THE COURT:  How does that come about, is that just
randomly picking a place or is there some connection with
somebody to this --

MR. DONNELLY:  I'm not sure, your Honor.  I would
hypothesize that the defendant was very familiar with that
area.  When his relatives testified, or friends or relatives at
the bail hearing, some of them were from that area of New York.
So I think he may have been familiar with that area.  Don't

1 know, but certainly plays were set up down there.

2      Since we were last before the Court on this case,

3 we've been able to confirm we obtained search warrants for the

4 defendant's cell phone on the date that's specified in the

5 Indictment, March 25, 2017. The location data for his cell

6 phone, for example, on that date comes back that that phone was

7 in Copiag, New York on that date. So we feel that the weight

8 of the evidence has only gotten stronger against Mr. Williams

9 and Mr. Gomes.

10      I would also ask the Court that, and it might be

11 understandable, but not to conflate Mr. Gomes's defense

12 counsel's arguments on his behalf for bail the various times we

13 were before the Court, not to conflate those arguments with

14 what we were saying about Mr. Gomes, I think the Court knows

15 our position all along was that Mr. Gomes should be detained.

16 You know, again, this Court, I think, gave him every benefit of

17 the doubt on bail issues, but Mr. Gomes couldn't help himself

18 and finally violated so many conditions, it put this Court in a

19 position where he had to be detained.

20      Our position was all along that he should be detained,

21 that he's dangerous, et cetera. We never painted him as an

22 alter boy either and as somebody who was an innocent victim of

23 Mr. Williams. What we have here is a person certainly who is

24 nine or ten years older than an 18-year-old who has no parental

25 guidance in his life, no familial guidance in his life of any

1    practical import.  Certainly, Mr. Williams should know and knew

2    better that whether you want to call him a predator or whether

3    you want to call him an opportunist who is taking advantage of

4    the services offered by Mr. Gomes to him to help him in this

5    conspiracy, I don't think it matters much.  It certainly

6    doesn't acquit anybody of any offense here.

7            Mr. Williams was, again, reminding the Court, a worker

8    at a group home, was using the group home's van to swing by the

9    residence of Mr. Gomes where the minor victim was crashing, for

10   lack of a better term, at the time, was staying at that time,

11   and Mr. Williams, according to the victim, would come by and

12   collect money from Mr. Gomes.

13           THE COURT:  And the minor victim, was she under state

14   supervision at the time?

15           MR. DONNELLY:  She was, your Honor.  I believe a

16   Capias or a Family Court warrant had been issued for her.  When

17   she was recovered by Special Agent Donaghy and Detective

18   Iacone, she was turned over to the Family Court.  I believe she

19   was held in Family Court custody for some time, a month or two,

20   in there somewhere, but then she was released.  She's in the

21   community at present.

22           I don't know if that answers the Court's questions

23   here.  We just don't think anything has really changed here,

24   except the passage of time, which with the passage of time is

25   all based on, you know, Motions to Continue and Motions to

1  Suppress filed by the defendants.  So we'll be ready to go when

2  they are and after Judge Smith decides the Motion to Suppress.

3        THE COURT:  Alright.  Mr. Dixon-Acosta, is there

4  anything you wish to respond briefly, sir?

5        MR. DIXON-ACOSTA:  Just that the Government's position

6  regarding the hierarchy is a theory, your Honor.  It's a theory

7  that fits neatly regarding age differences between these three

8  individuals.  It fits neatly regarding the (inaudible).

9        THE COURT:  Well, one minute.  I mean, it fits more

10  than neatly -- may I have -- the people involved in this

11  conspiracy are a minor who was in state custody, a minor, or,

12  excuse me, a young 18-year-old, a young adult who had just been

13  released from state supervision, and then somebody who is

14  working in a group home, I mean, it's more than just a theory.

15  That's a fact, right, of who the players are in this.

16        I mean, one could argue that somebody who is working

17  in the field he's working at, if he had knowledge that there

18  was a minor who was under some state supervision and was

19  involved in these activities, he should be going to law

20  enforcement, not using it as an opportunity to make some money

21  on the side.

22        MR. DIXON-ACOSTA:  I'm not arguing the theory, your

23  Honor.  The argument is whether poor judgment when one should

24  know better automatically equals praying upon a younger person.

25  In this case, with the volume of evidence, I submit it's

1    equally compelling, if not more compelling, when you look at

2    the histories of who these three individuals are; that you have

3    a minor who has been involved in the particular activity and

4    who is actively looking to align themselves with someone to

5    help her further at her activity.  That's not a

6    characterization, that's her own words, your Honor, via text

7    messages.

8         And not with these people, with people other than the

9    defendants before she met the defendants.  You have she, who

10   has been involved in this activity, knows the ins and outs of

11   what to do, enlists her new roommate, significant other, and

12   his older associate/confidant/former whatever, to help her

13   engage in this activity.  You have her conduct via text message

14   with others militating against the suggestion that she is one

15   who could be prayed upon by anyone, regardless of the age.

16   Even at 17 when she takes the reigns, takes the initiative, to

17   do XYZ to further this activity, to decline engaging in

18   activity that she's not comfortable with to herself suggest to

19   others, women, that they should also be involved in this

20   activity because of the money she's making.  All of that

21   factually goes against the theory that it is Mr. Williams who

22   is reaping the benefits; it is Mr. Williams who is directing

23   the activity; it's Mr. Williams whose behest at which she is

24   doing these things.

25        Similarly, Mr. Gomes's own background and behavior

1    militates against the suggestion that he was taken advantage

2    upon by anyone.  If the allegations were true, there is no

3    doubt that Mr. Williams should have known better.  There's no

4    doubt that he should not have been engaged in this activity.

5    There's no doubt that at the first sign of either one of these

6    18/17-year-olds coming to him and suggesting that they could

7    make money in this way, that he should have said no way and

8    dialed the phone and called Mr. Donnelly.  But what the

9    evidence shows him actually doing does not, in my fair opinion,

10   your Honor, hold weight that when you view that against who

11   these individuals are and what they've done of their own

12   rapport, that he was the one who they reported.  When you take

13   that out of the equation, I resubmit that what you have are

14   three individuals, maybe one being older and wiser than the

15   other two, maybe should have known better on his own, but three

16   individuals who were equally engaged in activity for their own

17   (inaudible) benefit or to assist one another, and it's on that

18   basis that I believe tips the scale, and hope the Court will

19   agree, to allow Mr. Williams a chance to re-engage with the

20   community while the matter is pending.  He has handled himself

21   both before this indiscretion, and I don't mean to -- strike

22   that.

23         THE COURT:  I hear you.  I understand.

24         MR. DIXON-ACOSTA:  And insist as one who would seek

25   the opportunity to atone for what has been done and to answer

1  the consequences.

2        THE COURT:  Alright.  Thank you, sir.

3        The defendant is charged with offenses in this case

4  that carry a significant mandatory minimum jail sentence which

5  creates a risk of flight, and also suggests a danger to the

6  community given the nature of the activities engaged in.  The

7  offenses charged trigger under federal law presumption that

8  there are no bail combination -- conditions or combination of

9  bail conditions that I could set that would reasonably assure

10  the safety of the community or the defendant's appearance for

11  future court proceedings.

12        As required, that is a presumption that may be

13  rebutted by the defendant.  I previously found that the

14  defendant did not rebut that presumption and I continue to find

15  that the defendant has not rebutted that presumption.  Even if

16  I accept the argument that all three here are equal

17  co-conspirators, I don't think that that argument, although

18  well made by Mr. Dixon-Acosta, tips the balance, in my opinion.

19        So I am going to deny the defendant's motion to

20  reconsider bail in this matter, Document No. 70.  I will issue

21  a written order that says I'm denying that for the reasons

22  stated at today's hearing.  If the defense wishes to appeal

23  that decision or create -- that will be a decision you can

24  appeal to Judge Smith if you choose to from the docket.

25        Anything further today from the Government in this

1    matter, Mr. Donnelly?

2            MR. DONNELLY:  No.  Thank you.

3            THE COURT:  Anything further from the defense today?

4            MR. DIXON-ACOSTA:  No.  Thank you again for hearing

5    this, your Honor.

6            THE COURT:  So the defendant remains detained as

7    previously ordered.  Court will be in recess.

8

9            (The hearing was concluded.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# C E R T I F I C A T I O N

I, Karen M. Aveyard, Approved Federal Court Transcriber, do hereby certify that the foregoing transcript, consisting of 15 pages, is a correct transcript prepared to the best of my skill, knowledge and ability from the official digital sound recording of the proceedings in the above-entitled matter.

/s/ Karen M. Aveyard

Karen M. Aveyard

July 18, 2018

Date